CV 14   1753

**MICHAEL J. REDENBURG, ESQ. PC**
Michael J. Redenburg
150 Broadway, Suite 808
New York, NY 10038
Phone: (212) 240-9465

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARK HARBOUR,**<br>　　　　　　　　**Plaintiff,**<br>v.<br><br>**THE CITY OF NEW YORK, NYPD OFFICER VANDERPOOL (Tax ID#955617) AND NYPD OFFICERS JOHN DOES #1-3, individually and in their official capacities (the names John Doe being fictitious, as the true names are presently unknown),**<br>　　　　　　　　**Defendants.** | **Complaint**<br><br>**JURY TRIAL DEMANDED**<br><br>Civ. No.: |

## NATURE OF THE ACTION

1. This is a civil rights action alleging that the City of New York, NYPD Officer Vanderpool and NYPD Officers John Does #1-3, violated Plaintiff's rights under 42 U.S.C. §1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that, on March 4, 2014, defendants falsely arrested him and made false allegations about him to the Kings County District Attorney's Office. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

1

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article 1 of the New York Constitution, and New York common law.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §1331 and §1343.

4. Venue is proper in the district pursuant to 28 U.S.C. §§1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Mark Harbour ("Plaintiff" or "Mr. Harbour") is a forty five year old African American man residing in Kings County, New York and is a United States citizen.

7. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD a department or agency of the defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8. Defendant NYPD OFFICER VANDERPOOL AND NYPD OFFCIERS JOHN DOES #1-3 are members of the New York City Police Department ("NYPD") who were acting under color of state law and in their capacities as New York City law enforcement officers at all relevant times. Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect Plaintiff from unconstitutional conduct. Defendant NYPD OFFICER VANDERPOOL AND NYPD OFFICERS JOHN DOES #1-3 are sued in both their individual and official capacities.

## STATEMENT OF FACTS

9. Plaintiff resides at 4 Lewis Avenue, Apt. 7C, Brooklyn, NY and said property known as the Sumner Houses, which are NYCHA residences.

10. Plaintiff resides at 4 Lewis Avenue, Apt. 7C, Brooklyn, NY with his wife and mother.

11. On March 4, 2014, and at about 7PM, Plaintiff was home with his mother when his mother complained of noise coming from above the apartment and so Plaintiff went to investigate.

12. Since Plaintiff resides on the top floor of the NYCHA residence, as more specifically set forth in ¶¶9, 10, above, Plaintiff's investigation took him toward the rooftop of the building.

13. As Plaintiff ascended the stairway leading to the roof of the building he noticed two uniformed NYPD officers at the rooftop landing.

14. Plaintiff next noticed two more NYPD Officers emerge from the elevator.

15. One of the two NYPD Officers at the rooftop landing was NYPD Officer Vanderpool and Officer Vanderpool demanded Plaintiff's identification.

16. In compliance with NYPD Officer Vanderpool's orders, Plaintiff produced his New York State Driver's license, which listed 4 Lewis Avenue, Apt. 7C, Brooklyn, NY as his address.

17. Next, NYPD Officer Vanderpool proceeded to search and frisk Plaintiff and said search revealed that Plaintiff had on his person: a cell phone, a cell phone case, a white cell phone charger cable, a cell phone charger, keys (in assorted colors) a broken key handle with key and a multi-tool key chain.

18. As such, Plaintiff was placed under arrest and charged with violating NY PL 140.15, Criminal Trespass in the Second Degree; NY PL 140.10 Criminal Trespass in the Third Degree and NY PL 140.05 Criminal Trespass in the Fourth Degree

19. Thereafter, Plaintiff was transported to the 79th Precinct where he was processed and spent approximately six (6) hours.

20. Subsequently, Plaintiff was taken to Brooklyn Central Booking where he awaited arraignment.

21. At arraignment, the criminal charges against Plaintiff were adjourned in contemplation of dismissal.

22. Plaintiff was deprived of his liberty, suffered an unlawful detention, experienced emotional distress, mental anguish, fear, anxiety, embarrassment, humiliation and damage to his reputation.

## FIRST CLAIM
### §1983 FALSE ARREST

23. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

24. Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

25. Plaintiff was aware of his confinement and he did not consent to it.

26. The confinement was not otherwise privileged.

27. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
### UNLAWFUL STOP AND SEARCH

28. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

29. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion.

30. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### §1983 FABRICATION OF EVIDENCE

31. Plaintiff repeats and realleges each and every allegation as if more fully set forth herein.

32. The individual defendants created false evidence against Plaintiff and forwarded such false evidence to the Kings County District Attorney's Office.

33. In creating such false evidence, the defendants violated Plaintiff's constitutional right to a fair trial.

34. The aforesaid conduct by the City of New York violated Plaintiff's rights under 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

35. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

## FOURTH CLAIM
### Failure to Intervene

36. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

37. All of the individually named officers, including without limitation, NYPD OFFICER VANDERPOOL AND NYPD OFFCIERS JOHN DOES #1-3 were present and had an opportunity to prevent such conduct and had a duty to intervene and prevent such conduct- but consciously failed and refused to intervene.

38. Accordingly, NYPD OFFICER VANDERPOOL AND NYPD OFFCIERS JOHN DOES #1-3 who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

39. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CLAIM
### §1983 "MONELL" CLAIM

40. Plaintiff repeats realleges each and every allegation as if more fully set forth herein.

41. The City, through policies, practices and customs, directly caused the constitutional violations suffered by Plaintiff.

42. The City, through its police department, has had and still has hiring, training, promotion and retention practices that it knows will lead to the hiring, training and promotion of police officers unable to discharge their duties in accordance with the constitution.

43. The City, through its police department, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence and perjury.

44. The City, at all relevant times, was aware that this individual defendant routinely commits constitutional violations such as those at issue here and has failed to change its policies, practices and customs to stop this behavior.

45. The City, at all relevant times, was aware that this individual defendant is an unfit officer who has previously committed the acts alleged herein and/or has the propensity for unconstitutional conduct.

46. These policies, practices and customs were the moving force behind Plaintiff's injuries.

47. Moreover, the City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a

pattern and practice of illegal stops, seizures, questioning, searches and false arrests of authorized residents of and/or visitors to NYCHA residences.

48. The NYPD first implemented vertical patrols in 1991. The protocol was adopted to address crime, and specifically, drug activity, in NYCHA residences. It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure, 212-59).

49. In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident. If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her own home, he or she is arrested for trespass. If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

50. The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, frisk and even search individuals in the common areas of NYCHA residences in the absences of individualized objective facts.

51. In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years. *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau,* New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24. These figures underestimate the actual numbers of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also

7

conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

52. In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

53. Trespassing in public housing is a Class B Misdemeanor under subsection (e) of New York Penal Law §140.10, which was enacted in 1992 shortly after the inception of the vertical patrol program.

54. The number of trespass arrests in NYCHA residences has surged. The City has not provided a legitimate and neutral explanation for this rise in the arrest rate.

55. The NYPD Patrol Guide on vertical patrols provides NYPD officers no guidance on who is to be stopped, seized, questioned, frisked, searched or arrested for trespass. It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and roof landings and take appropriate police action when necessary." (NYPD Patrol Guide 212-60). Yet the vertical patrol provisions contain no criteria for determining who is – and who is not – an "unauthorized person."

56. The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his or her home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his or her home. Given the large number of people

8

legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident, visitor, permittee or licensee based on this policy.

57. Defendant's failure to provide adequate guidance, training and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, frisk, search and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

58. The only guiding principle provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

59. Under this policy, as written, people are, or can be, arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. This is true even if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

60. Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

61. In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA

residents themselves. According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony). Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their building. *Id.*

62. In fact, NYCHA leases do not contain any such clause. A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord. For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

63. Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

64. Loitering also requires a specific unlawful purpose for being present at a location such as "begging," NY Penal Law §240.35(1); gambling, NY Penal Law §240.35; sexual conduct, NY Penal Law §240.35(3); possessing a controlled substance, NY Penal Law §240.36; or engaging in prostitution, NY Penal Law §240.37.

65. Thus, there is no legal basis for wholesale stopping, seizing, questioning, frisking, searching and arresting individuals for mere presence in lobbies, roofs, hallways and stairwells in and around NYCHA residences. Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

66. The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, frisk, seize, search and arrest individuals for trespass. On information and belief, defendant CITY OF NEW YORK does not monitor improper stops, seizures and searches for trespass. Nor has the defendant instituted any follow-up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause.

67. As a direct and proximate result of this unlawful conduct and the above customs and practices, Plaintiff sustained the damages alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

a. Compensatory damages against all defendants, jointly and severally;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorneys' fees and costs;

d. Such other relief as this Court shall deem just and proper.

Dated: March 18, 2014
New York, NY

s/
Michael J. Redenburg (NY #MR4662)
MICHAEL J. REDENBURG, ESQ. PC
150 Broadway, Suite 808
New York, NY 10038
mredenburg@mjrlaw-ny.com
1-212-240-9465 (Phone)
1-917-591-1667 (Fax)